Michelle R. Press (SBN 163637)
Michelle.Press@wilsonelser.com
Michael L. Parker (SBN 138253)
Michael.Parker@wilsonelser.com
**WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP**
555 South Flower Street, Suite 2900
Los Angeles, California 90071
Telephone: (213) 443-5100
Facsimile: (213) 443-5101

Attorneys for Clear Blue Insurance Company

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CLEAR BLUE INSURANCE COMPANY, a corporation,<br><br>Plaintiff,<br><br>v.<br><br>ANTHONY NGUYEN; ELIZABETH NGUYEN; JOSEPH ARMENDARIZ; ANNA ARMENDARIZ; MARISOL VILLASENOR; PABLO JESUS VENEGAS TORRES; RAYLENE RAMIREZ; ANTONIA YAZMIN RAMIREZ; MOISES RAMIREZ GALEANA; ANGELINA CRUZ; SIXTO MACEDO; MARIA RAMIREZ; ROBERTO RAMIREZ; ROBERTO CARLOS RAMIREZ; ROGELIO MOLINA ALANIZ; MARTHA RAMOS; ANALILIA CERVANTES; ELIZABETH MABEL THAI CERVANTES; LILIANA BECERRA; RAMON LUIS RAMOS; ISAMAR GARCIA; ROGELIO ALANIZ; FRANCISCA APARACIO-MARTINEZ; CLAUDIA GOMEZ; | Case No.:<br><br>District Judge<br>Magistrate Judge<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND REIMBURSEMENT OF AMOUNTS INCURRED RELATED TO UNCOVERED CLAIMS**<br><br>Complaint Filed: |

ENRIQUE AVILA; ENRIQUE AVILA GOMEZ; MICHELLE RENA CASTRO; JOSE IVAN MORENO; REYNA ZUNIGA; AND ELIAS ZUNIGA,

Defendants.

Plaintiff Clear Blue Insurance Company ("Clear Blue" or "Plaintiff") hereby brings this complaint against defendants Anthony Nguyen; Elizabeth Nguyen; Joseph Armendariz; Anna Armendariz (collectively "Insured Defendants") with respect to an underlying action filed by defendants Marisol Villasenor; Pablo Jesus Venegas Torres; Raylene Ramirez; Antonia Yazmin Ramirez; Moises Ramirez Galeana; Angelina Cruz; Sixto Macedo; Maria Ramirez; Roberto Ramirez; Roberto Carlos Ramirez; Rogelio Molina Alaniz; Martha Ramos; Analilia Cervantes; Elizabeth Mabel Thai Cervantes; Liliana Becerra; Ramon Luis Ramos; Isamar Garcia; Rogelio Alaniz; Francisca Aparacio-Martinez; Claudia Gomez; Enrique Avila; Enrique Avila Gomez; Michelle Rena Castro; Jose Ivan Moreno; Reyna Zuniga; and Elias Zuniga ("underlying plaintiffs").

**<u>JURISDICTION AND VENUE</u>**

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), as it is a dispute between citizens of different states and the amount in controversy exceeds the sum of $75,000. The plaintiff is a corporation formed in Illinois, with its headquarters in Puerto Rico and all the defendants are citizens of

California, as more fully alleged in paragraphs 7 through 12, below.

2. Plaintiff is informed and believes, and on that basis alleges, that venue is proper pursuant to 28 U.S.C. section 1391(b)(2) because a substantial part of the events giving rise to the action occurred in this District and/or 28 U.S.C. section 1391(b)(1) because the defendants are residents of this District.

3. The underlying action out of which this insurance coverage dispute arises concerns a lawsuit filed in Los Angeles, California.

## INTRODUCTION

4. This coverage matter arises out of an underlying action brought by former tenants of an apartment building located at 5220 Tyler Street, Riverside, California 92503 for substandard habitable conditions. The underlying action is entitled *Villasenor, et al. v. Ngyuen, et al.*, Riverside Superior Court Case No. CVRI2501213 ("the underlying action"). Attached hereto as Exhibit 1 is a true and correct copy of the first amended complaint in the underlying action.

5. Plaintiff seeks a declaration from this Court that it has no obligation to indemnify Insured Defendants in the underlying action for damages that are not covered under the policy.

6. Plaintiff also seeks reimbursement of defense fees and costs expended on behalf of Insured Defendants to defend against non-covered claims.

## THE PARTIES

7. Plaintiff currently is, and was at all times mentioned herein, a

corporation formed in the State of Illinois with its home office in Puerto Rico. At all relevant times, Plaintiff was permitted to do business in the State of California.

8. Plaintiff is informed and believes and on that information and belief alleges that defendant Anthony Nyugen is an individual, and a citizen of California who resides in Orange County, California.

9. Plaintiff is informed and believes and on that information and belief alleges that defendant Elizabeth Nguyen is an individual, and a citizen of California who resides in Orange County, California.

10. Plaintiff is informed and believes and on that information and belief alleges that defendant Joseph Armendariz is an individual, and a citizen of California who resides in Orange County, California.

11. Plaintiff is informed and believes and on that information and belief alleges that defendant Anna Armendariz is an individual, and a citizen of California who resides in Orange County, California.

12. Plaintiff is informed and believes and on that information and belief alleges that defendants Marisol Villasenor; Pablo Jesus Venegas Torres; Raylene Ramirez; Antonia Yazmin Ramirez; Moises Ramirez Galeana; Angelina Cruz; Sixto Macedo; Maria Ramirez; Roberto Ramirez; Roberto Carlos Ramirez; Rogelio Molina Alaniz; Martha Ramos; Analilia Cervantes; Elizabeth Mabel Thai Cervantes; Liliana Becerra; Ramon Luis Ramos; Isamar Garcia; Rogelio Alaniz; Francisca Aparacio-Martinez; Claudia Gomez; Enrique Avila; Enrique Avila

Gomez; Michelle Rena Castro; Jose Ivan Moreno; Reyna Zuniga; and Elias Zuniga are individuals who are and/or were tenants of the residential property located at 5220 Tyler Street, Riverside, California 92503, are plaintiffs in the underlying action and are citizens of California who reside in Riverside County, California.

## FACTUAL BACKGROUND

### The Property

13. Plaintiff is informed and believes and thereon alleges that from December 10, 2003 through March 13, 2023, defendants Anthony Nguyen, Elizabeth Nguyen and Joseph Armendariz owned the property located at 5220 Tyler Street, Riverside, California 92503 (the "property"). Plaintiff is informed and believes and thereon alleges that from March 13, 2023 to the present, non-party 5220 Tyler Apartments, LLC owned the property.

14. Plaintiff is informed and believes and thereon alleges that from December 10, 2003 through March 13, 2023, defendant Anna Armendariz served as property manager for the property.

### Plaintiff's Insurance Policies

15. Plaintiff Clear Blue issued a policy containing commercial general liability coverage to Anthony & Elizabeth Nguyen and Joseph Armendariz, designated as Policy No. AB02-001232-00, effective from November 12, 2018 to November 12, 2019, and renewed as Policy No. AB02-001232-01, effective from

November 12, 2019 to November 12, 2020 and Policy No. AB02-001232-02 effective from November 12, 2020 to November 12, 2021 (the "policy"). The CGL declarations identify Location Number 1 as 5220 Tyler St., Riverside, CA 92503.

16. The Policies contain limits of $1 million for Each Occurrence and $1 million for Personal and Advertising Injury, subject to a $2 million General Aggregate Limit (including Products-Completed Operations).

17. CGL coverage is provided in the Policies pursuant to Form CG 00 01 04 13. The Policies contain the following pertinent provisions:

> **SECTION I-COVERAGES**
>
> **COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.
>
> b. This insurance applies to "bodily injury" and "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II —Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.of Section II — Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or

claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II —Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

* * *

**2. EXCLUSIONS**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**j. Damage to Property**

"Property Damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property.

* * *

**COVERAGE B- PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

* * *

**2. Exclusions**

This insurance does not apply to:

* * *

**f. Breach of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement."

* * *

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

* * *

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

* * *

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

* * *

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

* * *

2. Each of the following is also an insured:

* * *

b. Any person (other than your "employee" or "volunteer worker"), or an organization while acting as your real estate manager.

**SECTION V- DEFINITIONS**

* * *

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

13. Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies,

committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

* * *

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be

deemed to occur at the time of the "occurrence" that caused it.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The Policy contains the following "Fungi or Bacteria Exclusion:"

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of,

ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

Fungi Or Bacteria

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ABSOLUTE LEAD EXCLUSION**

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" for past, present or future claims arising in whole or in part, either directly or indirectly, out of the suspected, actual or alleged:

a. Manufacture of;

b. Distribution of;

c. Transportation of;

d. Sale of;

e. Resale of;

f. Re-branding of;

g. Installation of;

h. Repair of;

i. Removal of;

j. Encapsulation of;

k. Abatement of;

l. Replacement of;

m. Carried on clothing;

n. Handling of;

o. Storage of;

p. Ingestion of;

q. Absorption of;

r. Physical exposure to; or

s. Testing for

lead paint or other products containing lead whether or not the lead is or was at any time airborne as a particle, contained in a product ingested, inhaled, transmitted in any fashion, or found in any form whatsoever.

In addition this exclusion applies to:

(1) The costs of clean up or removal of lead or products and materials containing lead;

(2) The cost of such actions as may be necessary to monitor, assess and evaluate the release or threat of release of lead or products and material containing lead:

(3) The cost of disposal of lead substances or the taking of such other action that may be necessary to temporarily or permanently prevent, minimize or mitigate damage to the public health or welfare or to the environment, which may otherwise result;

(4) The cost of compliance with any law or regulation regarding lead.

The company does not have any obligation to defend, adjust, investigate or pay any cost for investigation, defense, adjustment, or attorney fees which are excluded under the terms of this endorsement.

* * *

**The Underlying Action**

18. On February 27, 2025, the underlying action was filed against the Insured Defendants. On May 14, 2025, the underlying plaintiffs filed a first amended complaint asserting the following causes of action: (1) Breach of the Implied Warranty of Habitability; (2) Breach of Covenant and Right to Quiet

Enjoyment and Possession of the Property; (3) Breach of Covenant and Right to Quiet Enjoyment and Possession of the Property (5220 Tyler Apartments, LLC); (4) Wrongful Eviction; (5) Fraud ; and (6) Negligence; (7) Intentional Infliction of Emotional Distress; and (8) Intentional Infliction of Emotional Distress.

19. The underlying complaint alleges that 37 plaintiffs (including minors that are not parties to this action) were tenants in 10 units at the property as follows:

| **Unit** | **Underlying Plaintiffs** | **Tenancy** |
|---|---|---|
| 1 | Marisol Villasenor | October 20, 2018 through mid-March 2023 |
| 1 | Pablo Jesus Venegas Torres | October 20, 2018 through mid-March 2023 |
| 1 | Raylene Ramirez | October 20, 2018 through mid-March 2023 |
| 1 | Janelle Ramirez (a minor) | October 20, 2018 through mid-March 2023 |
| 1 | Angie Ramirez (a minor) | October 20, 2018 through mid-March 2023 |
| 1 | Itzel Venegas (a minor) | October 2018 and moved out in mid-March 2023 |

| Unit | Underlying Plaintiffs | Tenancy |
|---|---|---|
| 1 | Pablo Giovanni Venegas, Jr. (a minor) | July 2020 to Mid-March 2023 |
| 3 | Antonia Yazmin Ramirez | January 2009 through April 2023 |
| 3 | Moises Ramirez Galeana | January 2009 through April 2023 |
| 3 | Angel Moises Ramirez (a minor) | January 2009 through April 2023 |
| 3 | Ashley Alexandra Ramirez (a minor) | January 2009 through April 2023 |
| 3 | Violet Jazmin Ramirez (a minor) | April 2011 through April 2023 |
| 5 | Michelle Rena Castro | July 2013 through April 2023 |
| 5 | Jose Ivan Moreno, | July 2013 through April 2023 |
| 5 | Erika Audrey Moreno (a minor), | July 2013 through April 2023 |
| 5 | Reyna Zuniga | July 2013 through April 2023 |
| 5 | Elias Zuniga | July 2013 through April 2023 |
| 6 | Maria Ramirez | March 2015 through summer 2023 |
| 6 | Angelina Cruz | April 2015 through summer 2023 |
| 6 | Roberto Ramirez | January 2016 through summer 2023 |

| Unit | Underlying Plaintiffs | Tenancy |
|---|---|---|
| 6 | Roberto Carlos Ramirez | November 2017 through summer 2023 |
| 6 | Sixto Macedo | March 2019 through summer 2023 |
| 6 | Xander Macedo Ramirez (a minor) | December 2020 through summer 2023 |
| 12 | Rogelio Molina Alaniz | January 2018 to January 2022 |
| 13 | Martha Ramos | October 2015 until May 2023 |
| 14 | Ramon Luis Ramos | January 2013 until April 2023 |
| 14 | Analilia Cervantes, | November 2014 until April 2023 |
| 14 | Elizabeth Cervantes | November 2014 until April 2023 |
| 14 | Liliana Becerra | November 2014 until April 2023 |
| 18 | Isamar Garcia | March 2022 through August 2023 |
| 18 | Rogelio Alaniz | March 2022 through August 2023 |
| 27 | Francisca Aparacio-Martinez | January 2016 through April 2023 |
| 32 | Claudia Gomez, | December 1998 through May 2023 |
| 32 | Enrique Avila, | December 1998 through May 2023 |
| | Enrique Avila Gomez | December 1998 through May 2023 |
| 32 | Abel Avila (a minor) | January 2017 to May 2023 |

| Unit | Underlying Plaintiffs | Tenancy |
|---|---|---|
| 32 | Brielle Marie Avila (a minor) | January 2016 through May 2023 |

20. The underlying plaintiffs allege Defendants Anthony and Elizabeth Nguyen are husband and wife who held an undivided 70% interest in the property from December 10, 2003 through March 13, 2023. (Ex. 1, ¶ 14.) Defendant Joseph Armendariz allegedly held an undivided 30% interest in the property from December 10, 2003 through March 13, 2023. (Ex. 1, ¶ 15.) Anna Armendariz allegedly is the wife of Joseph Armendariz and served as the property manager at the property. (Ex. 1, ¶ 16.) The underlying plaintiffs allege that nonparties 5220 Tyler Apartments, LLC purchased the property on March 13,2023 for a price of $4,500,000 and Doug Wetton Properties, Inc. has served as the property manager at the property since March 13, 2023. (Ex. 1, ¶¶17, 18.)

21. The underlying plaintiffs allege that their respective units at the property were rent controlled as of January 1, 2020 pursuant to Cal. Civ. Code § 1946.2 et seq. (Ex. 1, ¶ 26.) Plaintiffs allege that the following defects and substandard conditions have existed at the property throughout their respective tenancies: unsealed wall penetrations at plumbing lines that allow vermin to enter; unsealed range hood vent penetrations and inoperable vent hoods; water leaks with attendant mold growth; malfunctioning electrical plugs; deteriorated carpet

and flooring; leaking faucets and plumbing; missing smoke detectors; and insect and rodent infestations. (Ex. 1, ¶ 27.)

22. The underlying plaintiffs allege that they engaged a building and safety expert who conducted an inspection at the property on April 2, 2023 and verified the existence of various defects in units 12 and 27. (Ex. 1, ¶¶ 28-29.)

23. The underlying plaintiffs allege that the Insured defendants and non-parties were allegedly aware of the complained of defects or conditions but failed or refused to remediate them. (Ex. 1, ¶¶ 32-36.) The underlying plaintiffs further allege that 5220 Tyler Apartments, LLC is alleged to have conducted a pre-purchase inspection of the property, but nonetheless refused to make any repairs to plaintiffs' units after becoming the owner of the property. (Ex. 1, ¶ 37.)

24. The underlying plaintiffs allege that non-parties 5220 Tyler Apartments, LLC and Doug Wetton Apartments, Inc. told the underlying plaintiffs on March 30, 2023 that they must vacate their respective units by May 31, 2023. The underlying plaintiffs allege that non-parties 5220 Tyler Apartments, LLC and Doug Wetton Apartments, Inc. misrepresented that substantial repairs were going to be completed at the property, and that plaintiffs could not remain in their units while work was being performed. (Ex. 1, ¶¶ 76-79.) The underlying plaintiffs (except Rogelio Molina Alaniz) allege that non-parties 5220 Tyler Apartments, LLC evicted them from the property without good cause in violation of Cal. Civ. Code § 1946.2. (Ex. 1,. ¶¶ 86-92.)

25. The underlying plaintiffs pray for the following damages and relief: general and special damages, rent abatement, punitive and exemplary damages, attorneys' fees and costs of suit. The underlying plaintiffs assert in the aggregate claims in excess of the jurisdictional minimum of this court.

**Defense of the Underlying Action**

26. Insured Defendants tendered defense of the underlying action to Clear Blue, and Clear Blue agreed to provide a defense pursuant to a full and complete reservation of rights.

27. Clear Blue has been incurring legal fees and costs to defend Insured Defendants in the underlying action for claims that are not potentially covered under the Policies.

**Stay of this Complaint**

28. Plaintiff agrees to stay this action while the underlying action is pending, guaranteeing there will be no prejudice to Insured Defendants.

**FIRST CAUSE OF ACTION**

**DECLARATORY RELIEF AGAINST ALL DEFENDANTS**

**(No Duty to Indemnify Insured Defendants for Mold Damages)**

29. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

30. The underlying plaintiffs allege, among other things, damages because of exposure to or the existence of mold at the property ("mold damages").

31. The Policies do not afford coverage for the mold damages pursuant to the Fungi or Bacteria Exclusion, which provides that there is no coverage for "bodily injury" or "property damage" which would not have occurred or "personal injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

32. Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for mold damages under the Policies.

33. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the Policies for mold damages in the underlying action, and that Plaintiff has a duty to indemnify Insured Defendants under the Policies.

34. An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the Policies for mold damages in the underlying action, and a judicial determination is necessary to resolve this dispute.

**SECOND CAUSE OF ACTION**

**DECLARATORY RELIEF AGAINST ALL DEFENDANTS**

**(No Duty to Indemnify Insured Defendants for Lead Damages)**

35. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

36. The underlying plaintiffs allege, among other things, damages arising in whole or in part out of exposure to lead-based paint ("lead damages").

37. The Policies do not afford indemnity coverage for lead damages pursuant to the Absolute Lead Exclusion, which provides there is no coverage for "bodily injury" or "property damage" or "personal and advertising injury" arising in whole or in part, either directly or indirectly, out of the suspected, actual or alleged exposure to lead paint or other products containing lead.

38. Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action under the Policies for lead damages at the property.

39. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the Policies for lead damages in the underlying action, and that Plaintiff has a duty to indemnify Insured Defendants under the Policies.

40. An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the Policies for lead damages in the underlying action, and a judicial determination is necessary to resolve this dispute.

## THIRD CAUSE OF ACTION

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

**(No Duty to Indemnify Insured Defendants for Violation of B&P Code § 17200, *et seq*.)**

41. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

42. The underlying plaintiffs allege violation of Business & Professions Code section 17200 et seq. by Insured Defendants in the underlying action, and allege remedies thereunder including statutory penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law.

43. The Policies do not afford indemnity coverage for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, *et seq*., as the Policies only afford coverage for "bodily injury," "property damage" or damages resulting from enumerated offenses of "personal and advertising injury."

44. Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, *et seq*.

45. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the Policies for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200 et seq. under the Policies.

46. An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the Policies for these damages in the underlying action, and a judicial determination is necessary to resolve this dispute.

## FOURTH CAUSE OF ACTION

## DECLARATORY RELIEF AGAINST ALL DEFENDANTS

**(No Duty to Indemnify Insured Defendants for Plaintiffs' Attorneys' Fees and Costs)**

47. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

48. The underlying plaintiffs allege entitlement to their attorneys' fees and costs in the underlying complaint pursuant to Civil Code section 1942.4(b)(2).

49. The Policies do not afford coverage for attorneys' fees or attorneys' expenses taxed against the insured pursuant to SUPPLEMENTARY PAYMENTS – COVERAGE A AND B, section 1.e.

50. Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for the underlying plaintiffs' attorneys' fees or attorneys' expenses taxed against the insured.

51. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the Policies for the underlying plaintiffs' attorneys' fees or attorneys' expenses taxed against the insured.

52. Plaintiff seeks a declaration from this Court that there is no coverage in the underlying action for the underlying plaintiffs' attorneys' fees or attorneys' expenses taxed against the insured.

**FIFTH CAUSE OF ACTION**

**DECLARATORY RELIEF AGAINST ALL DEFENDANTS**

**(No Duty to Indemnify Insured Defendants for Exemplary and Punitive Damages)**

53. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

54. The underlying plaintiffs allege, among other things, that they are entitled to exemplary and punitive damages.

55. The Policies do not afford coverage for exemplary and punitive damages as those are not damages because of "bodily injury", "property damage" or "personal and advertising injury."

56. California Insurance Code section 533 provides in pertinent part "[a]n insurer is not liable for a loss caused by the willful act of the insured …."

57. Plaintiff contends it has no duty to indemnify Insured Defendants in the underlying action for exemplary and/or punitive damages.

58. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the Policies for exemplary and punitive damages in the underlying action, and that Plaintiff has a duty to indemnify Insured Defendants for such damages under the Policies.

59. An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the Policies for exemplary and punitive damages in the underlying action, and a judicial determination is necessary to resolve this dispute.

## SIXTH CAUSE OF ACTION

## FOR REIMBURSEMENT

**(Reimbursement of Uncovered Defense Fees and Costs against Insured Defendants)**

60. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

61. Plaintiff agreed to defend Insured Defendants in the underlying action under a reservation of rights, including the right to seek reimbursement of attorneys' fees and costs expended to defend Insured Defendants for claims not

covered under the Policies.

62. Plaintiff is incurring fees and costs to defend Insured Defendants against claims that are not covered under the Policies in an amount in excess of the jurisdictional minimum of this court.

63. Plaintiff is entitled to reimbursement for amounts it has expended to defend Insured Defendants from uncovered claims in the underlying action, with interest.

## SEVENTH CAUSE OF ACTION

## FOR DECLARATION RELIEF

**(No Coverage for Damages that Did Not Occur during the Policy Terms)**

64. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

65. Plaintiff insured the Insured Defendants under the Policies with policy periods from November 12, 2018 to November 12, 2021 ("Policy Periods").

66. Plaintiff is informed and believes and on that basis alleges that the underlying plaintiffs claim damages because of "bodily injury" or "property damage", or "personal and advertising injury" offenses, that occurred prior to the Policy Periods and after the expiration of the Policy Periods.

67. Plaintiff contends that damages that occurred prior to the inception of the Policy Periods and damages that occurred after the expiration of the Policy Periods are not covered under the Policies.

68. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the under the Policies for damages that occurred prior to the inception of the Policy Periods and damages that occurred after the expiration of the Policy Periods.

69. An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the Policies for damages for "bodily injury" or "property damage", or "personal and advertising injury" offenses, that occurred prior to the inception of the Policy Periods, or after the expiration of the Policy Periods, and a judicial determination is necessary to resolve this dispute.

## EIGHTH CAUSE OF ACTION

## FOR DECLARATION RELIEF

**(No Coverage for Relief that Does Not Qualify as Compensatory Covered Damages)**

66. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

67. Plaintiff is informed and believes and on that basis alleges that the underlying plaintiffs seek or may obtain relief that does not qualify as compensatory damages because of "bodily injury" "property damage" and/or "personal and advertising injury", such as but not limited to, penalties, statutory damages designed to deter, restitution, disgorgement, return of rent or security deposit, statutory penalties, and other alleged economic or financial harm and/or relief or damages are

excluded by the Policies ("other uncovered damages") and/or are excluded by exclusions ("excluded damages") in the Policies.

68. Plaintiff contends that other uncovered and excluded damages are not covered under the Policies.

69. Plaintiff is informed and believes and thereon alleges that Insured Defendants contend that there is coverage under the under the Policies for other uncovered or excluded damages.

70. An actual dispute and controversy exists between Plaintiff and Insured Defendants as to coverage under the Policies for other uncovered and/or excluded damages and a judicial determination is necessary to resolve this dispute

**NINTH CAUSE OF ACTION**

**FOR DECLARATORY RELIEF AGAINST ALL DEFENDANTS**

**(No Duty to Indemnify for Damages for Intentional Infliction of Emotional Distress)**

71. Plaintiff refers to and incorporates herein by reference each and every allegation set forth above as if set forth here in full.

72. Plaintiff is informed and believes and on that basis alleges that the underlying plaintiffs claim damages for intentional infliction of emotional distress.

73. Plaintiff contends that there is no coverage under the Policies for damages for underlying plaintiffs' claims of intentional infliction of emotional distress.

74. Plaintiff is informed and believes and thereon alleges that Defendants dispute whether there is coverage under the under the Policies for damages for underlying plaintiffs' claims of intentional infliction of emotional distress.

75. An actual dispute and controversy exists between Plaintiff and Defendants as to coverage under the Policies for damages for underlying plaintiff's claims for intentional infliction of emotional distress, and a judicial determination is necessary to resolve this dispute.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each of the defendants as follows:

1. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants for mold damages under the Policy with respect to the underlying action pursuant to the first cause of action;

2. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants for lead damages under the Policy with respect to the underlying action pursuant to the second cause of action;

3. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the Policies for penalties, statutory damages designed to deter, disgorgement damages and other remedies imposed by law, including those imposed by Business & Professions Code section 17200, *et seq*. pursuant to the third cause of

action;

4. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the Policies for Plaintiffs' attorneys' fees and costs pursuant to the fourth cause of action.

5. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the Policies for exemplary and punitive damages pursuant to the fifth cause of action.

6. For reimbursement of amounts Plaintiff has expended to defend noncovered claims pursuant to the sixth cause of action in an amount in excess of the jurisdictional minimum of this court.

7. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the Policies for damages because of "bodily injury" or "property damage", or "personal and advertising injury" offenses, that occurred prior to the Policy Periods and after the expiration of Policy Periods., pursuant to the seventh cause of action.

8. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the Policies for other uncovered and/or excluded damages pursuant to the eighth cause of action.

9. For a judicial declaration that Plaintiff has no duty to indemnify Insured Defendants under the Policies for the underlying plaintiffs'

claims of intentional infliction of emotional distress pursuant to the ninth cause of action.

10. For a judicial declaration that the Policies are rescinded as a result of material misrepresentation and/or non-disclosure pursuant to the tenth cause of action.

11. For costs of suit herein.

12. For prejudgment interest on amounts awarded herein.

13. For such other and further relief as the Court deems just and proper.

Dated March 6, 2026

WILSON ELSER MOSKOWITZ
EDELMAN & DICKER LLP

By: *<u>/s/ Michael L. Parker</u>*
Michelle Press
Michael L. Parker
Attorneys for Plaintiff Clear Blue Insurance Company

# EXHIBIT A

Electronically FILED by Superior Court of California, County of Riverside on 05/14/2025 08:57 AM
Case Number CVRI2501213 0000129079866 - Jason B. Galkin, Executive Officer/Clerk of the Court By Stephanie Anderson, Clerk

Margaret A. Elder (SBN 177424)
Chandra Gehri Spencer (SBN 184010)
Lanetta D. W. Rinehart (SBN 208969)
ELDER & SPENCER, LLP
17011 Beach Boulevard, Suite 900
Huntington Beach CA 92647
Tel: (714) 375-6696
Fax: (888) 422-8027

Attorneys for Plaintiffs MARISOL VILLASENOR, et al

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

| | |
|---|---|
| MARISOL VILLASENOR; PABLO JESUS VENEGAS TORRES; RAYLENE RAMIREZ; ITZEL VENEGAS, a minor by and through his guardian ad litem Marisol Villasenor; ANGIE RAMIREZ, a minor by and through her guardian ad litem Marisol Villasenor; JANELLE RAMIREZ, a minor by and through her guardian ad litem Marisol Villasenor; PABLO GIOVANNI VENEGAS JR, a minor by and through his guardian ad litem Marisol Villasenor; ANTONIA YAZMIN RAMIREZ; MOISES RAMIREZ GALEANA; ANGEL MOISES RAMIREZ, a minor by and through his guardian ad litem Antonia Yazmin Ramirez; ASHLEY ALEXANDRA RAMIREZ, a minor by and through her guardian ad litem Antonia Yazmin Ramirez; VIOLET JAZMIN RAMIREZ, a minor by and through her guardian ad litem Antonia Yazmin Ramirez; ANGELINA CRUZ; SIXTO MACEDO; MARIA RAMIREZ; ROBERTO CARLOS RAMIREZ; ROBERTO RAMIREZ; XANDER MACEDO RAMIREZ, a minor by and through his guardian ad litem Maria Ramirez; ROGELIO MOLINA ALANIZ; MARTHA RAMOS; ANALILIA CERVANTES; ELIZABETH MABEL THAI CERVANTES; LILIANA BECERRA; RAMON LUIS RAMOS; ISAMAR GARCIA; ROGELIO MOLINA ALANIZ; FRANCISCA APARACIO-MARTINEZ; CLAUDIA GOMEZ; ENRIQUE AVILA; | Case No: CVRI2501213<br>Judge: Hon. Eric A. Keen<br>Dept. 6<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>**1. BREACH OF THE IMPLIED WARRANTY OF HABITABILITY**<br>**2. BREACH OF COVENANT AND RIGHT TO QUIET ENJOYMENT AND POSSESSION OF THE PROPERTY**<br>**3. BREACH OF COVENANT AND RIGHT TO QUIET ENJOYMENT AND POSSESSION OF THE PROPERTY**<br>**4. WRONGFUL EVICTION**<br>**5. FRAUD**<br>**6. NEGLIGENCE**<br>**7. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>**8. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**DEMAND FOR JURY TRIAL** |

ENRIQUE AVILA GOMEZ; BRIELLE MARIE AVILA, a minor by and through her guardian ad litem Enrique Avila Gomez; MICHELLE RENA CASTRO; JOSE IVAN MORENO; ERIKA AUDREY AUDREY, a minor by and through her guardian ad litem Michelle Rena Castro; REYNA ZUNIGA; ELIAS ZUNIGA;

Plaintiffs,

v.

ANTHONY NGUYEN; ELIZABETH NGUYEN; JOSEPH ARMENDARIZ; ANNA ARMENDARIZ; 5220 TYLER APTS LLC, a California Limited Liability Company; DOUG WETTON PROPERTIES INC., a California Corporation; and DOES 1 through 50, inclusive

Defendants.

PLAINTIFFS ALLEGE AS FOLLOWS:

## PARTIES

### I. Plaintiffs

1. Plaintiffs are current and former tenants of the multi-family residential property located at 5220 Tyler Street, Riverside CA 92503 (the "Property"). Plaintiffs have at all times satisfied the provisions of their respective leases and are in lawful possession of their units.

2. Plaintiffs MARISOL VILLASENOR; PABLO JESUS VENEGAS TORRES; RAYLENE RAMIREZ; JANELLE RAMIREZ, a minor by and through her guardian ad litem Marisol Villasenor; and ANGIE RAMIREZ, a minor by and through her guardian ad litem Marisol Villasenor, resided in Unit 1 at the Property from October 20, 2018 to mid-March 2023 when they were wrongfully evicted. ITZEL VENEGAS, a minor by and through his guardian ad litem Marisol Villasenor; and PABLO GIOVANNI VENEGAS JR, a minor by and through his guardian ad litem Marisol Villasenor, moved into Unit 1 shortly after their births in October 2018 and July 2020 respectively. They too moved from the unit on or about March 2023.

3. Plaintiffs ANTONIA YAZMIN RAMIREZ; MOISES RAMIREZ GALEANA; ANGEL MOISES RAMIREZ, a minor by and through his guardian ad litem Antonia Yazmin Ramirez; and ASHLEY ALEXANDRA RAMIREZ, a minor by and through her guardian ad litem Antonia Yazmin Ramirez, lived in Unit 3 from January 2009 until they were wrongfully evicted in April 2023. VIOLET JAZMIN RAMIREZ, a minor by and through her guardian ad litem Antonia Yazmin Ramirez moved into Unit 3 shortly after her birth in April 2011 until April 2023.

4. Plaintiff MARIA RAMIREZ moved into Unit 6 in or about March 2015. Plaintiff ANGELINA CRUZ moved into Unit 6 in or about April 2015. Plaintiff ROBERTO RAMIREZ moved into Unit 6 in or about January 2016. Plaintiff ROBERTO CARLOS RAMIREZ moved into Unit 6 in or about November 2017. Plaintiff SIXTO MACEDO moved into Unit 6 in or about March 2019. Plaintiff XANDER MACEDO RAMIREZ, a minor by and through his guardian ad litem Maria Ramirez, moved into Unit 6 shortly after his birth in December 2020. All of these Plaintiffs moved into Unit 6 with the knowledge and permission of the Defendants. Plaintiffs were forced from Unit 6 in the summer of 2023 after they were wrongfully evicted.

5. Plaintiff ROGELIO MOLINA ALANZ resided in Unit 12 at the Property from January 2018 until January 2022.

6. Plaintiff MARTHA RAMOS resided in Unit 13 at the Property from October 2015 until she was wrongfully evicted in May 2023.

7. Plaintiff RAMON LUIS RAMOS moved into Unit 14 at the Property in or about January 2013. Plaintiffs ANALILIA CERVANTES, ELIZABETH MABEL THAI CERVANTES and LILIANA BECERRA moved into Unit 14 in or about November 2014 with the knowledge and permission of the Defendants. These Plaintiffs moved from Unit 14 when they were wrongfully evicted in April 2023.

8. Plaintiffs ISAMAR GARCIA and ROGELIO MOLINA ALANIZ resided in Unit 18 at the Property since from March 2022 until they were wrongfully evicted in or about August 2023.

9. Plaintiff FRANCISCA APARACIO-MARTINEZ resided in Unit 27 at the Property from January 2016 until March or April 2023 when she was wrongfully evicted.

10. Plaintiffs CLAUDIA GOMEZ; ENRIQUE AVILA; and ENRIQUE AVILA GOMEZ moved into Unit 32 at the Property in or about December 1998. BRIELLE MARIE AVILA, a minor by and through her guardian ad litem Enrique Avila Gomez, moved into Unit 32 shortly after their births in January 2017 and January 2016. These Plaintiffs were wrongfully evicted in May 2023.

11. Plaintiffs MICHELLE RENA CASTRO; JOSE IVAN MORENO; ERIKA AUDREY MORENO, a minor by and through her guardian ad litem Michelle Rena Castro; REYNA ZUNIGA; and ELIAS ZUNIGA moved into Unit 5 at the Property in or about July 2013. These Plaintiffs were wrongfully evicted in April 2023.

12. Plaintiffs have written leases for their respective units which renewed as a matter of law. For the purposes of this action, the essential terms of those lease agreements are that: Plaintiffs paid rent to live in their units and Plaintiffs' landlord was required to comply with whatever obligations are imposed by law as to the agreement, including the implied warranty of habitability and the covenant of quiet enjoyment. True and correct copies of some of these lease agreements are attached hereto as Exhibit A and incorporated herein by reference.

13. Unless otherwise noted, all Plaintiffs will be collectively referred to as "Plaintiffs" throughout the entire Complaint.

## II. **Defendants**

14. Plaintiffs are informed and believe, and thereon allege, that Defendants ANTHONY NGUYEN and ELIZABETH NGUYEN are individuals and are /were husband and wife. At all relevant times herein, these Defendants were doing business in the County of Riverside, State of California. Defendants ANTHONY NGUYEN and ELIZABETH NGUYEN held an undivided 70% interest in the Property from December 10, 2003 until March 13, 2023.

15. Plaintiffs are informed and believe, and thereon allege, that Defendant JOSEPH ARMENDARIZ is an individual. At all relevant times herein, this Defendant was doing business in the County of Riverside, State of California. Defendant JOSEPH ARMENDARIZ held an undivided 30% interest in the Property from December 10, 2003 until March 13, 2023.

16. Plaintiffs are informed and believe, and thereon allege, that Defendant ANNA ARMENDARIZ is an individual and is/ was Defendant JOSEPH ARMENDARIZ'S wife. At all relevant times herein, this Defendant was doing business in the County of Riverside, State of California. Defendant ANNA ARMENDARIZ actively managed the Property for the NGUYEN/ ARMENDARIZ Defendants, including handling maintenance requests, showing units, collecting rent and executing lease agreements for the undisclosed principals, the NGUYEN/ ARMENDARIZ Defendants.

17. Plaintiffs are informed and believe, and thereon allege, that Defendant 5220 TYLER APTS LLC is a California Limited Liability Company doing business in the County of Riverside, State of California. Plaintiffs are informed and believe, and thereon allege, that Defendant 5220 TYLER APTS LLC is a single purpose Limited Liability Company formed on or about March 13, 2023 for the purpose of holding title to the Property for its managing member, Wetton Investment Properties Inc. Defendant 5220 TYLER APTS LLC purchased the Property on or about March 13, 2023 for $4,500,000.00, a profit of over $2,500,000.00 to the NGUYEN/ ARMENDARIZ Defendants.

18. Defendant DOUG WETTON PROPERTIES INC. is a related entity to Wetton Investment Properties Inc. and Defendant 5220 TYLER APTS LLC, with common ownership, principal place of business and management. This Defendant has managed the Property for Defendant 5220 TYLER APTS LLC since March 13, 2023.

19. Plaintiffs are informed and believe, and thereon allege, that Defendants engaged in activities of a lessor and/ or landlord at the Property, including, but not limited to: receiving rents for the Property; being entitled to receive rents for the Property; management of the Property; operation of the Property; leasing of the Property; maintenance of the Property; maintaining books, records and accounts for the Property; obtaining and keeping tenants at the Property; negotiation, renewal, extension, modification and cancellation of leases for the Property; performance, or lack thereof, of tenant leases for the Property; enforcement of tenant leases for the Property; collection and keeping of rents at the Property; pursuing legal action against tenants for allegedly failing to pay rents due for the Property; inspecting the Property; distribution of notices for the Property;

and/ or promulgation of rules for the Property.

20. The true names and/ or capacities, whether individual, corporate, association or otherwise, of Defendants DOES 1 through 50, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by fictitious names. Plaintiffs are informed and believe, and thereon allege, that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the evens and happenings hereinafter referred to, and thereby proximately and legally cause the injuries and damages to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of court to amend this Complaint to insert the true names and/ or capacities of such fictitiously named Defendants when the same have been ascertained.

21. Unless otherwise noted, all Defendants will be collectively referred to as "Defendants" throughout the entire Complaint.

22. At all times mentioned herein, in doing the things hereinafter alleged, each agent, employee and representative of any entity Defendant that performed the actions for such entity Defendant, was acting within the course and scope of such agency, service and representation, and that such entity Defendant directed, aided and abetted, authorized or ratified each and every act and conduct hereinafter alleged.

23. Plaintiffs are informed and believe, and thereon allege, that an officer, director, or managing agent of each DOE Defendant who is an entity had advance knowledge of the unfitness of the agent, employee or representative who committed unlawful acts and the entity and employed such agent, employee or representative with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct or was personally guilty of oppression, fraud, or malice.

24. In doing the things hereinafter alleged, each agent, employee and representative of any Defendant that performed the actions for such Defendant was acting within the course and scope of such agency, service and representation, and such Defendant directed, aided and abetted, authorized or ratified each and every act and conduct hereinafter alleged.

25.

## THE PROPERTY

26. The Property is a multi-unit residential apartment complex, which is occupied by tenants and their families, including low-income tenants, minorities and families with children. All of the tenants were long term tenants. As of January 1, 2020, all of the tenants were in rent controlled units pursuant to the Tenant Protection Act, Civil Code section 1946.2, et seq.

27. During all times relevant to this action, the Property – including the respective units where Plaintiffs resided during that time – has substantially lacked any or all of the following affirmative standard characteristics and had the following nuisance, untenantable and substandard conditions as noted by Plaintiffs during the following time frames:

- Unsealed wall penetrations at plumbing supplies that allow insects and vermin to enter;
- Unsealed range hood vent penetrations or inoperable vent hoods;
- Evidence of active or old water leaks with some mold growth present;
- Malfunctioning electrical plugs;
- Carpet/ flooring deteriorated;
- Leaking faucets and plumbing;
- Missing smoke detectors; and
- Insect and rodent infestations.

| UNIT 1 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Cockroach infestation | November 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Bedbug infestation | December 2022 | December 2022 | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Rodent infestation | 2019 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |

| UNIT 1 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Broken windows living room and kitchen | October 20, 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Windows did not/ do not open/ close living room, kitchen, bedroom | October 20, 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Windows did not/ do not lock bedroom, kitchen | October 20, 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Broken window screens bathroom | October 20, 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Missing window screens living room, kitchen, bedroom | October 20, 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Heater did/ does not work properly | February 2021 | February 2021 | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Air conditioning did/ does not work properly | March 2019 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Electrical outlets did/ do not work kitchen, bedroom | November 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Water turned off without notice frequently throughout tenancy | October 20, 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Mold/ mildew in bathroom, bedroom closet, windows | November 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |

| UNIT 1 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Leaky faucets or fixtures under kitchen sink | August 2021 | August 2022 | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Clogged plumbing Kitchen kink, bathtub, bathroom sink, toilet | January 2022 | January 2022 | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Bathtubs/ showers deteriorated | August 2021 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Deteriorated sink | August 2021 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Defective toilet | March 2022 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Deteriorated cabinets | 2019 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Holes in walls/ ceilings bathroom and kitchen | 2019 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Cracks in walls/ ceilings in living room | July 2023 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Deteriorated paint throughout unit | April 2020 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Deteriorated carpet in bedroom | March 2019 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |

| UNIT 1 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Unstable/ unsafe stairs always | October 20, 2018 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |
| Any other problems? When it rains the patio would hold water and come inside the house | November 2019 | Move out | Plaintiffs made verbal and/ or written complaints to the manager Claudia throughout their tenancy. |

| UNIT 3 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Cockroach infestation | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Rodent infestation | 2009 | 2022 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Heater did/ does not work properly | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Air conditioning did/ does not work properly did not cool, electrical short, burned curtains | 2015 | 2016 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Electrical outlets did/ do not work in bedroom, bathroom and living room | 2009 | 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 3 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Electrical power surges | 2022 | 2022 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Other electrical issues | 2021 | 2022 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Missing smoke detectors | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Missing carbon monoxide detector | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Water turned off without notice frequently throughout tenancy | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Mold/ mildew in bathroom frequent mushroom flowers coming out of bathroom wall | 2021 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Leaky faucets or fixture kitchen sink, bathtub | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Clogged plumbing bathtub clogs, drainage problems in bathroom | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 3 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Deteriorated sink leaking faucets and mold | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Defective toilet old dirty/toilet seat | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Defective/ broken appliance(s) Oven never worked | 2009 | 2020 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated cabinets kitchen cabinets, hole in drawers, humidity/mold/rotten | 2023 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Holes in walls/ ceilings kitchen | 2021 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Cracks in walls/ ceilings throughout unit | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated flooring cracked tile, not placed correctly | 2009 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Any other problems? Part of stucco falling outside on patio | 2022 | Move out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 5220-5 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Cockroach infestation | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Bedbug infestation | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Rodent infestation | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Windows did not/ do not open/ close kitchen and front bedroom | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Windows did not/ do not lock all | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Broken window screens all but bathroom | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Missing window screens bathroom | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Heater did/ does not work properly | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |

| UNIT 5220-5 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Air conditioning did/ does not work properly | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Electrical outlets did/ do not work all over | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Missing smoke detectors | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Missing carbon monoxide detector | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Mold/ mildew in bathrooms and kitchen | July 2014 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Leaky faucets or fixtures in kitchen and bathtub | July 2014 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Clogged plumbing kitchen and bathtub | July 2014 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Bathtubs/ showers deteriorated | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |

| UNIT 5220-5 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Deteriorated sink kitchen | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Defective/ broken appliance(s) Stove | July 2015 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Deteriorated cabinets in kitchen | July 2015 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Holes in walls/ ceilings kitchen sink, bathroom | July 2015 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Deteriorated paint throughout unit | July 2015 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Deteriorated carpet in bedroom and living room | July 2015 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Deteriorated flooring in kitchen | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |
| Unstable/ unsafe stairs all 4 stairs | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |

| UNIT 5220-5 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Unstable/ unsafe walkway(s) courtyard | July 2013 | April 8, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) Claudia and Anna and maintenance personnel throughout their tenancy. |

| UNIT 6 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Cockroach infestation | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Bedbug infestation | 2018 | 2018 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Rodent infestation | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Windows did not/ do not open/ close bedroom, living room, kitchen | April 2015 | January 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Windows did not/ do not lock bedroom, living room, kitchen | April 2015 | January 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 6 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Missing window screens all windows | April 2015 | January 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Heater did/ does not work properly never worked, smelled | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Air conditioning did/ does not work properly would blow hot air, was replaced with used AC which ended up not working | 2016 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Electrical outlets did/ do not work none worked, loose | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Missing smoke detectors | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Missing carbon monoxide detector | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Lack of hot water if neighbor showered at same time tenant would get cold water, if toilet flushed by neighbor, they would get burned | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 6 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Low water pressure | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Water turned off without notice frequently throughout tenancy | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Mold/ mildew in bedroom closet, bathroom | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Leaky faucets or fixtures in kitchen and bathroom | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Clogged plumbing bathroom, kitchen sink clogs all the time | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Bathtubs/ showers deteriorated peeling mold around the shower | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated sink bathroom sink is not installed correctly, bathroom sink cabinet is damaged by water | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Defective toilet relaced one did not flush properly | April 2015 | 2019 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 6 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Defective/ broken appliance(s) old stove (mini)oven didn't work tenant bought there own | April 2015 | August 2015 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated cabinets in kitchen bottom crumbling | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Holes in walls/ ceilings bedroom/kitchen – between cabinets | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated paint throughout unit | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated carpet old and dirty | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated flooring badly installed, some tiles higher than others, tripped often | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Unstable/ unsafe stairs rail moved, broken first two steps loose | 2020 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Unstable/ unsafe walkway(s) neighbor blocked entrance of stairs, problems with neighbor | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 6 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Any other problems? Vicious dogs | April 2015 | Move Out | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 18 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Cockroach infestation | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Bedbug infestation | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Rodent infestation | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Broken windows bedroom | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Broken window screens bedroom | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Heater did/ does not work properly | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 18 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Air conditioning did/ does not work properly | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Electrical outlets did/ do not work bedroom plug burnt out | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Broken smoke detectors living room/kitchen | April 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Missing carbon monoxide detector | April 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Lack of hot water in bathroom while bathing water would run out | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Mold/ mildew in bathroom tub, ceiling, and walls | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Clogged plumbing kitchen/bathroom under the sink leaks | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Bathtubs/ showers deteriorated | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 18 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Deteriorated sink kitchen/bathroom yellowing peeling, and chipping | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Defective toilet loose/water leaks onside of toilet | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Defective/ broken appliance(s) oven | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated cabinets in kitchen cabinet doors did not close | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Cracks in walls/ ceilings kitchen ceiling in corner by counters | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated paint throughout unit | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated flooring cracked tile in middle of bedroom | March 1, 2022 | August 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 32 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Cockroach infestation | 2016 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Bedbug infestation | 2017 | 2019 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Other insect infestation – Spiders | 2016 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Rodent infestation | 2016 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Windows did not/ do not lock Kitchen | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Missing window screens all windows | 1999 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Heater did/ does not work properly never worked, gas company said it needed to be replaced because it was old | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Air conditioning did/ does not work properly replaced but smells like Cigarettes | 2021 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 32 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Electrical outlets did/ do not work missing outlet covers | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Electrical power surges kitchen if plug in blender all power to kitchen would shut off | 2018 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Broken smoke detectors never worked | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Missing carbon monoxide detector | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Lack of hot water in bathroom/ kitchen | 2020 | Lasted 2 weeks | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Low water pressure in kitchen | 2020 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Water turned off without notice one time and it lasted 2 weeks | 2022 | 2022 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Mold/ mildew in bathroom ceiling and window, kitchen ceiling | 2016 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

| UNIT 32 | | | |
|---|---|---|---|
| **Uninhabitable Condition** | **When did these problems start?** | **When did the problems end?** | **Complaints Made // Responses** |
| Leaky faucets or fixtures in bathroom under sink, kitchen under sink | 2018 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Clogged plumbing bathroom tub, clogged upstairs neighbor would shower and all dirty water came up in the tub | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Bathtubs/ showers deteriorated tub old and molded | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Defective toilet issues with flushing, would have to put hand in tank to make it flush | 2019 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Deteriorated cabinets in hinges coming off cabinet doors | 2018 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Holes in walls/ ceilings behind front door | 1998 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Cracks in walls/ ceilings kitchen ceiling | 2019 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |
| Unstable/ unsafe stairs step/board lifted | 2019 | May 1, 2023 | Plaintiffs made verbal and/ or written complaints to the manager(s) and maintenance personnel throughout their tenancy. |

28. Unit 12 at the Property has had the following substandard conditions since January 2016, which were verified by Plaintiffs' building and safety expert on April 2, 2023:

- The security screen door is damaged, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(k)]
- The wall is damaged above the bathroom lavatory, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- The wall is damaged adjacent to the toilet, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- Evidence of water damage to the bathroom ceiling and wall, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(k)]
- Mold is present on the bathroom ceiling. [H.&S.C. Sec. 17920.3(a)(13) & 17920.3(k)]
- The bathroom doorjamb is damaged. The door latching mechanism does not engage, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(k)]
- The wall furnace does not operate leaving the tenant with no means of permanent heating, in need of repair. [H.&S.C. Sec. 17920.3(a)(6), 17920.3(f) & 17920.3(k)] / [C.C.C. Sec. 1941.1(a)(4)]
- The flooring is cracking in the living room, in need of replacement. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- The flooring is damaged entering the kitchen from the living room, in need of replacement. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- Missing the window screen on the kitchen window, in need of replacement. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- The kitchen sink faucet has a hole in the arm of the faucet, in need of replacement. [H.&S.C. Sec. 17920.3(e) & 17920.3(k)] / [C.C.C. Sec. 1941.1(a)(2)]
- Evidence of water damage to the kitchen ceiling and wall, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(k)]
- Missing smoke detector and carbon monoxide detector in the unit. [H.&S.C. Sec. 17920.3(c) & 17920.3(k)]
- Missing closet doors, in need of replacement. [H.&S.C. Sec. 17920.3(c) & 17920.3(k)]

29. Unit 27 at the Property has had the following substandard conditions since October 2015, which were verified by Plaintiffs' building and safety expert on April 2, 2023:

- The kitchen flooring is damaged, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- The windowsill is damaged at the kitchen window above the kitchen sink, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- Evidence of water damage to the kitchen ceiling in the corner to the left side of the kitchen sink, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- Evidence of previous water damage to the dining area ceiling, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- Evidence of previous water damage to the ceiling at the transition from the kitchen to the living room, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- The wall furnace does not operate leaving the tenant with no means of permanent heating, in need of repair. [H.&S.C. Sec. 17920.3(a)(6), 17920.3(f) & 17920.3(k)] / [C.C.C. Sec. 1941.1(a)(4)]
- Evidence of water damage to the bathroom wall, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- Mold is present on the bathroom window frame. [H.&S.C. Sec. 17920.3(a)(13) & 17920.3(k)]
- The bathroom wall is damaged adjacent to the bathtub, in need of repair. [H.&S.C. Sec. 17920.3(c) & 17920.3(i)]
- The electrical receptacle adjacent to the main entry door has no power, in need of repair. [H.&S.C. Sec. 17920.3(d) & 17920.3(k)] / [C.C.C. Sec. 1941.1(a)(5)]

30. During the time that the Property was managed and/ or owned by Defendants, Defendants were responsible for the management and maintenance of the Property either directly or through managers they hired.

31. Defendants have exercised real and apparent authority over the Property, have always had the ultimate legal authority and obligation to fix all conditions of the Property and failed to manage the Property in accordance with the standard of care.

32. Plaintiffs repeatedly complained to the NGUYEN/ ARMENDARIZ Defendants

regarding all of the habitability defects at the Property. The NGUYEN/ ARMENDARIZ Defendants repeatedly refused to repair the Property as requested. As described above, Plaintiffs made complaints to Defendants about the conditions of the Property which rendered it untenantable pursuant to Civil Code Section 1941.1 and substandard pursuant to Health and Safety Code Section 17920.3, in violation of numerous civil and criminal provisions of both state and local law. Plaintiffs' complaints were ignored for long periods of time.

33. The NGUYEN/ ARMENDARIZ Defendants failed to maintain the Property and refused to make repairs, despite the fact that they knew Plaintiffs were suffering.

34. The NGUYEN/ ARMENDARIZ Defendants were on actual and constructive notice of the conditions of the Property based on the obvious nature of the conditions, the number of times Defendants and the agents were present at or inspected the Property and the complaints made by Plaintiffs at the Property.

35. The conditions of the Property as described above are a consequence of the NGUYEN/ ARMENDARIZ Defendants' pattern and practice of failing to implement basic preventative maintenance, timely repair work, inspection and fumigation efforts.

36. The NGUYEN/ ARMENDARIZ Defendants, as owners and managers of the Property, knew or should have known that these failures would cause or continue to allow conditions of the Property which rendered it untenantable pursuant to Civil Code Section 1941.1 and substandard pursuant to Health and Safety Code Section 17920.3. Defendants' conscious disregard of the consequences of their actions and failures to act was intentional, malicious and outrageous.

37. Plaintiffs are informed and believe, and thereon allege, that Defendant 5220 TYLER APTS LLC conducted a detailed inspection of the Property during the due diligence and escrow period that lasted a minimum of 30 days before March 13, 2023. Defendants 5220 TYLER APTC LLC and DOUG WETTON PROPERTIES INC. knew the condition of Plaintiffs' units and the exterior of the Property before purchase. Since taking title to the Property, these Defendants have continued to demand rent without making a single repair to Plaintiffs' units.

**FIRST CAUSE OF ACTION**

(Breach of the Implied Warranty of Habitability)

(By all Plaintiffs against Defendants ANTHONY NGUYEN, ELIZABETH NGUYEN, JOSEPH ARMENDARIZ and ANNA ARMENDARIZ; and All Plaintiffs except ROGELIO MOLINA ALANIZ against Defendants 5220 TYLER APTC LLC and DOUG WETTON PROPERTIES INC.)

38. Plaintiffs incorporate the allegations of paragraphs 1 through 36 above as though fully set forth herein.

39. Defendants, as alleged above, engaged in activities of lessors at the Property, including, but not limited to: receiving rents for the Property; being entitled to receive rents for the Property; management of the Property; operation of the Property; leasing of the Property; maintenance of the Property; maintaining books, records and accounts for the Property; obtaining and keeping tenants at the Property; negotiation, renewal, extension, modification and cancellation of leases for the Property; performance, or lack thereof, of tenant leases for the Property; enforcement of tenant leases for the Property; collection and keeping of rents at the Property; pursuing legal action against tenants for allegedly failing to pay rents due for the Property; inspecting the Property; distribution of notices for the Property; and/ or promulgation of rules for the Property.

40. Under contract principles applicable to residential dwellings, Defendants were required to provide a habitable premises to Plaintiffs and failed to do so. Plaintiffs have written leases for their apartments and Plaintiffs are signatories to, or third-party beneficiaries of, those lease agreements. The lease agreements were entered into with, assigned to or inured to the benefit of Defendants. The lease agreements imposed, among other terms, an implied warranty of habitability under California law.

41. Also, under statutory law applicable to residential dwellings, Defendants, as lessors of the Property, were required to provide Plaintiffs with a tenantable dwelling, and failed to do so.

42. Also, under common law and principles of tort liability applicable to Defendants as owners and managers of the Property, Defendants were required to provide a habitable and

tenantable dwelling to Plaintiffs and failed to do so.

43. Defendants, who were managers and owners in possession, custody or control of the Property, had a duty to adequately repair and abate the conditions at the Property for the benefit of Plaintiffs, yet failed to do so.

44. Plaintiffs did not cause the existence of the untenantable and substandard conditions at the Property, which are alleged herein.

45. Defendants had actual or constructive notice of the substandard conditions at the Property, as alleged herein. Despite such notice, Defendants failed and/ or refused to repair these conditions for an unreasonably long period of time.

46. Defendants breached the implied warranty of habitability contained within the lease agreements by failing to properly maintain and repair the premises, failing to correct the untenantable and substandard conditions at the Property within reasonable time after being on notice of the defects.

47. Moreover, by failing to correct said defective conditions for an unreasonably long period of time, Defendants have breached their duty to maintain the Property in a habitable condition.

48. By Defendants' failure to maintain the Property in a habitable condition, these Defendants, and each of them, acted unreasonably and in want of ordinary care.

49. Defendants knew or should have known that permitting said defective conditions to exist threatened the physical and emotional health and well-being of Plaintiffs.

50. As a direct and proximate result of these Defendants' breaches of the warranty of habitability, Plaintiffs have suffered actual damage in an amount to be established at trial.

51. Such untenantable and substandard conditions have caused, and will continue to cause in the future, Plaintiffs to suffer general and special damages.

52. As a direct and proximate result of Defendants' breaches of the warranty of habitability, Plaintiffs are entitled to rent abatement in an amount to be proven at trial.

53. As a direct and proximate result of Defendants' breaches of the warranty of habitability, Plaintiffs have suffered loss of or damage to their personal property.

54. As a direct and proximate result of Defendants' breaches of the warranty of habitability, Plaintiffs have suffered other expenses or damages, including, but not limited to, food loss, costs for the purchase of pest control products, moving costs, additional laundry costs and/ or repair costs.

55. As a direct and proximate result of Defendants' breaches of the warranty of habitability, Plaintiffs have suffered and continue to suffer physical injury, pain, anxiety, discomfort, annoyance, inconvenience and distress all to their detriment and damage in an amount to be determined at trial.

56. Defendants' breaches of the warranty of habitability were knowing, intentional and malicious. Plaintiffs are therefore each entitled to exemplary and punitive damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

(Breach of Covenant and Right to Quiet Enjoyment and Possession of the Property)

(By all Plaintiffs against Defendants ANTHONY NGUYEN, ELIZABETH NGUYEN, JOSEPH ARMENDARIZ and ANNA ARMENDARIZ)

57. Plaintiffs incorporate the allegations of paragraphs 1 through 55 above as though fully set forth herein.

58. Defendants, as alleged above, engaged in activities of lessors at the Property, including, but not limited to: receiving rents for the Property; being entitled to receive rents for the Property; management of the Property; operation of the Property; leasing of the Property; maintenance of the Property; maintaining books, records and accounts for the Property; obtaining and keeping tenants at the Property; negotiation, renewal, extension, modification and cancellation of leases for the Property; performance, or lack thereof, of tenant leases for the Property; enforcement of tenant leases for the Property; collection and keeping of rents at the Property; pursuing legal action against tenants for allegedly failing to pay rents due for the Property; inspecting the Property; distribution of notices for the Property; and/ or promulgation of rules for the Property.

59. Implied in Plaintiffs' lease agreements is a covenant that Defendants would not interfere with Plaintiffs' quiet enjoyment of the premises during the term of each tenancy.

60. Civil Code Section 1927 requires that all Defendants, as lessors of the Property, to secure to Plaintiffs the quiet possession of the Property against all persons.

61. Under common law and principles of tort liability applicable to Defendants as owners and managers of the Property, Plaintiffs have a right to the quiet enjoyment of the Property.

62. Defendants interfered with Plaintiffs' quiet enjoyment and possession of their units by failing and/ or refusing to timely make repairs to the defects identified above during the times that those habitability defects existed.

63. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs will continue to suffer in the future, general and special damages.

64. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered loss of or damage to their leasehold interest to their detriment and damage in an amount to be determined at trial.

65. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered loss of or damage to their personal property.

66. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered other expenses or damages, including, but not limited to, food loss, costs for the purchase of pest control products, moving costs, additional laundry costs and/ or repair costs.

67. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered and continue to suffer physical injury, pain, anxiety, discomfort, annoyance, inconvenience and distress all to their detriment and damage in an amount to be determined at trial.

68. Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property was knowing, intentional and malicious. Plaintiffs are therefore each entitled to

exemplary and punitive damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

(Breach of Covenant and Right to Quiet Enjoyment and Possession of the Property)

(By all Plaintiffs except ROGELIO MOLINA ALANIZ against Defendant 5220 TYLER APTS LLC)

69. Plaintiffs incorporate the allegations of paragraphs 1 through 67 above as though fully set forth herein.

70. Defendants, as alleged above, engaged in activities of lessors at the Property, including, but not limited to: receiving rents for the Property; being entitled to receive rents for the Property; management of the Property; operation of the Property; leasing of the Property; maintenance of the Property; maintaining books, records and accounts for the Property; obtaining and keeping tenants at the Property; negotiation, renewal, extension, modification and cancellation of leases for the Property; performance, or lack thereof, of tenant leases for the Property; enforcement of tenant leases for the Property; collection and keeping of rents at the Property; pursuing legal action against tenants for allegedly failing to pay rents due for the Property; inspecting the Property; distribution of notices for the Property; and/ or promulgation of rules for the Property.

71. Implied in Plaintiffs' lease agreements is a covenant that Defendants would not interfere with Plaintiffs' quiet enjoyment of the premises during the term of each tenancy.

72. Civil Code Section 1927 requires that all Defendants, as lessors of the Property, to secure to Plaintiffs the quiet possession of the Property against all persons.

73. Under common law and principles of tort liability applicable to Defendants as owners and managers of the Property, Plaintiffs have a right to the quiet enjoyment of the Property.

74. Defendants interfered with Plaintiffs' quiet enjoyment and possession of their units by failing and/ or refusing to timely make repairs to the defects identified above during the times that those habitability defects existed.

75. In addition to the above allegations, Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. interfered with the quiet enjoyment and possession of the

Plaintiffs occupying Units 1, 3, 5, 6, 13, 14, 16, 18, 27 and 32 at the Property on March 30, 2023 when they demanded by written and oral communications between the manager and these Plaintiffs that the Plaintiffs vacate their units on or before May 31, 2023. These Defendants' actions violated the Tenant Protection Act of 2019 codified in Civil Code section 1946.2. Plaintiffs' units were all subject to the protections of the Tenant Protection Act and Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. did not have good cause for the eviction.

76. Contained within the March 30, 2023 notice, Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. intentionally misrepresented to Plaintiffs that their units were completely untenantable, that permits had been pulled for major renovation work and that the renovation work planned would take in excess of thirty (30) days. As of the issuance of the letter, no permits had been obtained for any work at the Property, and the maintenance needs in Plaintiffs' units could and should be able to be repaired within weeks – not months.

77. On or about April 4, 2023, Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. sent all Plaintiffs a letter notifying them that every tenant would be receiving a 60-day notice to vacate, if they had not already. The April 4, 2023 letter admitted that the work being done inside the units is 100% superficial and cosmetic. The totality of the work described in this letter would not take thirty days.

78. As of the time the Plaintiffs were forced from their homes, Defendants had not taken out any permits for any of the work being done at the Property, including the work completed within Unit 1.

79. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs will continue to suffer in the future, general and special damages.

80. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered loss of or damage to their leasehold interest to their detriment and damage in an amount to be determined at trial.

81. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered loss of or damage to their

personal property.

82. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered other expenses or damages, including, but not limited to, food loss, costs for the purchase of pest control products, moving costs, additional laundry costs and/ or repair costs.

83. As a direct and proximate result of Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property, Plaintiffs have suffered and continue to suffer physical injury, pain, anxiety, discomfort, annoyance, inconvenience and distress all to their detriment and damage in an amount to be determined at trial.

84. Defendants' interference with Plaintiffs' right to quiet enjoyment and possession of the Property was knowing, intentional and malicious. Plaintiffs are therefore each entitled to exemplary and punitive damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

(Wrongful Eviction)

(By All Plaintiffs except ROGELIO MOLINA ALANIZ against

Defendant 5220 TYLER APTS LLC)

85. Plaintiffs incorporate the allegations of paragraphs 1 through 83 above as though fully set forth herein.

86. Plaintiffs named herein were in lawful possession of their rental units pursuant to written leases for a period of at least one year. These leases were not month to month and had not yet expired.

87. Defendant 5220 TYLER APTS LLC wrongfully evicted Plaintiffs except ROGELIO MOLINA ALANIZ from the Property.

88. Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. interfered with the quiet enjoyment and possession of the Plaintiffs occupying Units at the Property on March 30, 2023 when they demanded by written and oral communications between the manager and these Plaintiffs that the Plaintiffs vacate their units on or before May 31, 2023. These Defendants' actions violated the Tenant Protection Act of 2019 codified in Civil Code section

1946.2. Plaintiffs' units were all subject to the protections of the Tenant Protection Act and Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. did not have good cause for the eviction.

89. Contained within the March 30, 2023 notice, Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. intentionally misrepresented to Plaintiffs that their units were completely untenantable, that permits had been pulled for major renovation work, and that the renovation work planned would take in excess of thirty (30) days. As of the issuance of the letter, no permits had been obtained for any work at the Property, and the maintenance needs in Plaintiffs' units could and should be able to be repaired within weeks – not months.

90. On or about April 4, 2023, Defendants 5220 TYLER APTS LLC and DOUG WETTON PROPERTIES INC. sent all Plaintiffs a letter notifying them that every tenant would be receiving a 60-day notice to vacate, if they had not already. The April 4, 2023 letter admitted that the work being done inside the units is 100% superficial and cosmetic. The totality of the work described in this letter would not take thirty days.

91. As of the time the Plaintiffs were forced from their homes, Defendants had not taken out any permits for any of the work being done at the Property, including the work completed within Unit 1.

92. As a direct and proximate result of these Defendants' wrongful eviction, the Plaintiffs named herein have suffered severe emotional distress in being wrongfully displaced from their homes on very short notice, incurred moving expenses and an increase in their rental payments from the fixed and rent controlled amounts they were paying at the Property.

93. As a direct and proximate result of these Defendants' wrongful eviction, Plaintiffs suffered loss of or damage to their leasehold interest to their detriment and damage in an amount to be determined at trial.

94. These Defendants' actions and failures to act as alleged above were knowing, intentional, and malicious. Plaintiffs are therefore each entitled to exemplary and punitive damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

(Fraud)

(By All Plaintiffs except ROGELIO MOLINA ALANIZ against Defendant 5220 TYLER APTS LLC)

95. Plaintiffs incorporate the allegations of paragraphs 1 through 93 above as though fully set forth herein.

96. Defendant 5220 TYLER APTS LLC, and through their named agent Defendant DOUG WETTON PROPERTIES INC., made multiple false representations to the Plaintiffs named herein beginning on or about March 30, 2023 through April 4, 2023 regarding the condition of the Property, the condition of Plaintiffs' units, that renovations would be substantial, that renovations would require permits, renovations would take longer than sixty (60) days to complete, and that these Defendants had pulled permits for extensive renovation work at the Property.

97. Plaintiffs are informed and believe and thereon allege that the Defendant made these false statements and fraudulent, unlawful 60-Day Notice to push the Plaintiffs out of their rent-controlled unit so that Defendant could make minor cosmetic improvements before re-renting the unit at market rate.

98. At the time these Defendants made these false statements, they knew them to be false. Plaintiffs are informed and believe that the President of both Defendants, Doug Wetton, was personally involved in the decision to lie to Plaintiffs to force them from their home for profit.

99. At the time these Defendants intentionally made these false statements, Defendant intended the Plaintiffs to rely on the representations and move out of their rent-controlled unit. The Plaintiffs named herein did rely on these intentionally false statements to their detriment and did relinquish possession of their rent-controlled unit.

100. As a direct result of these Defendants' fraudulent actions, the Plaintiffs named herein suffered extreme emotional distress from being forced from their homes, costs to move, and the increased amount of rent they are now paying at their new apartment in an amount to be determined at trial.

101. Plaintiffs are entitled to exemplary and punitive damages in an amount to be determined at trial as a result of these Defendants' fraudulent conduct.

**SIXTH CAUSE OF ACTION**

(Negligence)

(By all Plaintiffs against Defendants ANTHONY NGUYEN, ELIZABETH NGUYEN, JOSEPH ARMENDARIZ and ANNA ARMENDARIZ; and All Plaintiffs except ROGELIO MOLINA ALANIZ against Defendants 5220 TYLER APTC LLC and DOUG WETTON PROPERTIES INC)

102. Plaintiff incorporates the allegations of paragraphs 1 through 100 above as though fully set forth herein.

103. As owners and managers of the Property, Defendants owed Plaintiffs the duty under common law and Civil Code Section 1714 to exercise due care in management of the Property so as to avoid foreseeable injury to others.

104. This due care required Defendants to comply with all building, health, fire and safety codes, ordinances, regulations and other laws applying to maintenance and operation of residential housing, including, but not limited to, Civil Code Section 1941, Health and Safety Code Section 17920.3 and the Riverside Municipal Code.

105. The duties owed by Defendants to Plaintiffs to exercise reasonable care include, but are not limited to: the duty to refrain from interfering with Plaintiffs' full use and quiet enjoyment of their rented premise; the duty to comply with all applicable state and local laws governing Plaintiffs' rights as tenants; the duty to maintain Plaintiffs' premises in a safe, healthy and habitable condition for the entire term of Plaintiffs' tenancy; and, the duty to not obstruct Plaintiffs' full use and occupancy of their rented residence.

106. Defendants, by the conduct alleged above, so negligently and carelessly maintained, operated, and managed the Property as to breach the common law and statutory duties of due care that they owed to Plaintiffs.

107. Defendants knew, or reasonably should have known, that Plaintiffs would be injured as a result of this breach of these duties of due care.

108. As a direct and proximate result of Defendants' negligence, Plaintiffs have been damaged in an amount to be proven at trial.

109. Defendants' negligence has caused Plaintiffs to suffer general and special damages.

110. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered loss of or damage to their personal property.

111. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered other expenses or damages, including, but not limited to, food loss, costs for the purchase of pest control products, moving expenses, additional laundry costs and/or repair costs.

112. As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered and continue to suffer physical injury, pain, anxiety, discomfort, annoyance, inconvenience and distress all to his detriment and damage in an amount to be determined at trial.

113. Plaintiffs are entitled to exemplary and punitive damages in an amount to be determined at trial as a result of these Defendants' negligent conduct.

## SEVENTH CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

(By All Plaintiffs against Defendants ANTHONY NGUYEN, ELIZABETH NGUYEN, JOSEPH ARMENDARIZ and ANNA ARMENDARIZ)

114. Plaintiffs incorporate the allegations of paragraphs 1 through 112 above as though fully set forth herein.

115. As owners and managers of the Property, Defendants conducted themselves in a fashion that was outrageous, and intended to cause Plaintiffs' emotional distress, or acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress, by being forced from their homes.

116. Defendants' conduct in forcing or attempting to force Plaintiffs from their units unlawfully is so extreme that it goes beyond all possible bounds of decency and is intolerable in a civilized community.

117. Defendants, as owners and managers of the Property, abused their position of authority or relationship with Plaintiffs that gave them apparent power to affect Plaintiffs' interests.

118. By virtue of Defendants' outrageous conduct, Plaintiffs have suffered severe emotional distress, including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

119. Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

120. As a direct and proximate result of the outrageous conduct of these Defendants, Plaintiffs have suffered and continue to suffer emotional distress, anxiety, annoyance and discomfort all to Plaintiffs' detriment and damage in an amount to be proven at trial.

121. Defendants' outrageous conduct was knowing, intentional, and malicious. Plaintiffs are therefore entitled to exemplary and punitive damages in an amount to be determined at trial.

## **EIGHTH CAUSE OF ACTION**

(Intentional Infliction of Emotional Distress)

(By all Plaintiffs except ROGELIO MOLINA ALANIZ against Defendant 5220 TYLER APTS LLC)

122. Plaintiffs incorporate the allegations of paragraphs 1 through 120 above as though fully set forth herein.

123. As owners and managers of the Property, Defendants conducted themselves in a fashion that was outrageous, and intended to cause Plaintiffs' emotional distress, or acted with reckless disregard of the probability that Plaintiffs would suffer emotional distress, knowing that Plaintiffs were present and living in the uninhabitable conditions on a daily basis.

124. Defendants' conduct is so extreme that it goes beyond all possible bounds of decency and is intolerable in a civilized community.

125. Defendants, as owners and managers of the Property, abused their position of authority or relationship with Plaintiffs that gave them apparent power to affect Plaintiffs' interests.

126. As set forth in full above, Defendants unlawfully served Plaintiffs with a fraudulent 60-Day Notice demanding that they vacate their rent-controlled unit. Defendants knew that Plaintiffs were particularly vulnerable to emotional distress and further knew that their outrageous conduct would likely result in harm due to mental distress.

127. By virtue of Defendants' outrageous conduct, Plaintiffs have suffered severe emotional distress, including suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation and shame.

128. Defendants' conduct was a substantial factor in causing Plaintiffs' severe emotional distress.

129. As a direct and proximate result of the outrageous conduct of these Defendants, Plaintiffs have suffered and continue to suffer emotional distress, anxiety, annoyance and discomfort all to Plaintiffs' detriment and damage in an amount to be proven at trial.

130. Defendants' outrageous conduct was knowing, intentional, and malicious. Plaintiffs are therefore entitled to exemplary and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

**ON THE FIRST – THIRD CAUSES OF ACTION FOR PLAINTIFFS**:

1. For general and special damages in an amount to be determined at trial.
2. For rent abatement in an amount to be determined at trial.
3. For exemplary and punitive damages in an amount to be determined at trial.
4. Reasonable attorneys' fees.

**ON THE FOURTH – EIGHTH CAUSES OF ACTION FOR PLAINTIFFS**:

1. For general and special damages in an amount to be determined at trial.
2. For exemplary and punitive damages in an amount to be determined at trial.

**ON ALL CAUSES OF ACTION**:

1. For costs of suit, including expert costs as permitted by statute.
2. For such other relief as the court may deem just and proper.

PLAINTIFFS HEREBY DEMAND A JURY TRIAL.

DATED: May 13, 2025

ELDER & SPENCER, LLP

By:______________________________
LANETTA RINEHART, of Counsel
Attorneys for Plaintiffs